UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERT WAYNE THOMAS,

    Plaintiff,

v.                                      Case No.:  2:21-cv-65-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____

## OPINION AND ORDER

Plaintiff Robert Wayne Thomas seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A. Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v.*

*Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the ALJ must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

## C.   Procedural History

Plaintiff filed an application for a period of disability and disability insurance benefits on August 19, 2019, alleging disability beginning February 8, 2018. (Tr. 78, 158-59). The application was denied initially on October 3, 2018, and upon reconsideration on November 13, 2018. (Tr. 78, 88). Plaintiff requested a hearing and on February 25, 2020, a hearing was held before Administrative Law Judge Ryan Johannes ("ALJ"). (Tr. 41-70). On May 7, 2020, the ALJ entered a decision finding Plaintiff not under a disability from February 8, 2018, through the date of the decision. (Tr. 20-29).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on November 23, 2020. (Tr. 1-5). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on January 26, 2021, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 16).

## D.   Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through September 30, 2021. (Tr. 22). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 8, 2018, the alleged onset date. (Tr. 23). At step two, the ALJ found that Plaintiff had the following medically determinable impairments:

"hypertension, aortitis, hyperlipidemia, diverticulosis, alcohol use disorder, unspecified depressive disorder, panic disorder, and adjustment disorder with next anxiety and depressed mood." (Tr. 23). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 [C.F.R. §] 404.1521 *et seq.*)." (Tr. 23). In other words, the ALJ determined that Plaintiff did not have a severe impairment or combination of severe impairments at step two. (Tr. 28).

Even though the ALJ "stops short of finding severe physical or mental impairments," the ALJ also submitted Vocational Interrogatories to a vocational expert. (Tr. 28). Relying on the vocational expert's response that considered Plaintiff's age (59 on the alleged onset date), education (at least high school), work experience, and RFC (full range of work at all exertional levels, but is able to perform routine work with only occasional changes in the work routine), there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Tr. 28-29, 269-73). Specifically, the ALJ found that Plaintiff could have performed such occupations as:

    (1)    sweeper-cleaner, industrial, DOT[1] 389.683-010, medium, SVP 2

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

    (2)   fish cleaner, DOT 525.684-030, medium, SVP 2

    (3)   cleaner II, DOT 919.687-014, medium, SVP 2.

(Tr. 28-29). The ALJ concluded that Plaintiff had not been under a disability from February 8, 2018, through the date of the decision. (Tr. 29).

## II.   Analysis

On appeal, Plaintiff raises the following two issues: (1) whether the ALJ developed Plaintiff's medical history and properly evaluated the severity of his physical health impairments at step two; and (2) whether the ALJ properly evaluated the severity of Plaintiff's mental health impairments at step two in light of the available evidence. (Doc. 22, p. 14, 25).

For both issues, Plaintiff argues that the ALJ erred by finding his medically determinable impairments non-severe and denying Plaintiff's claim for benefits at step two of the sequential evaluation. (Doc. 22, p. 14-17, 25-27). To be entitled to disability benefits, a claimant must prove disability on or before the date last insured. *Bullard v. Comm'r, Soc. Sec. Admin.*, 752 F. App'x 753, 754 (11th Cir. 2018) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). To satisfy step two, a claimant must show that he suffers from an impairment or combination of impairments that significantly limits his physical or mental ability to do work. 20 C.F.R. § 404.1520(a)(4)(ii). Step two operates as a threshold inquiry that allows only the most trivial impairments to be rejected and therefore the burden is mild. *Id.* at

755 (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)); *Gray v. Comm'r of Soc. Sec.*, 426 F. App'x 751, 753 (11th Cir. 2011). But it also acts as a filter to weed out groundless claims that include no severe impairments. *Bullard*, 752 F. App'x at 755; *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 950 (11th Cir. 2014). The severity of an impairment is measured in terms of its effect on a claimant's ability to work and not simply in terms of deviation from purely medical standards of bodily perfection. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). The consequence of an ALJ finding no severe impairment or impairments at step two is that the ALJ should then reach a finding of no disability and not proceed to the next step. *Tuggerson-Brown*, 572 F. App'x at 951. With this standard in mind, the Court addresses Plaintiff's issues.

### A.   Severity of Plaintiff's Physical Impairments at Step Two

Plaintiff argues that the ALJ erred by not developing the record. (Doc. 22, p. 15). Plaintiff claims that the record lacks a physical health opinion at the time of and after his aortic surgery in June 2019 and it is "intuitive" that based on his advanced age, he would have some form of limitations from the surgery. (Doc. 22, p. 15-16). Plaintiff asserts that he has back pain and right leg neuropathy that should have satisfied the step two requirements. (Doc. 22, p. 16).

A plaintiff bears the burden of proving he is disabled and is responsible "for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272,

1275 (11th Cir. 2003). Even so, "[i]t is well-established that the ALJ has a basic duty to develop a full and fair record." *Id. See* 20 C.F.R. §404.1545(a)(3) ("However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources."). To remand a case because of an ALJ's failure to fully develop the record, the claimant must show that his right to due process has been violated to such an extent that the record contains evidentiary gaps, which resulted in unfairness or clear prejudice. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018). After review of the decision and given the medical records and other records before the ALJ, the ALJ did not err by failing to develop the record further, such as by failing to order a consultative medical examination.

Plaintiff implies that because of his advanced age he must "have some form of limitation from [aortic surgery]." (Doc. 22, p. 16). Plaintiff also claims that he had no physical health opinions since November 2018 even though his aortic surgery occurred on June 22, 2019. (Doc. 22, p. 16). Plaintiff points to two impairments, residual back pain after surgery and right leg neuropathy, but fails to cite to any medical records that support these impairments. (Doc. 22, p., 16).

While Plaintiff may not have undergone an evaluation for a physical health opinion, the ALJ cited the following medical record after the aortic surgery:

> In 2020 with his primary care provider, the claimant presented with normal gait and station, normal sensation, and normal strength (Ex. 10F/4). The claimant was assessed with hypertension and aortitis *with no mention of peripheral neuropathy* or previously prescribed Gabapentin (Ex. 10F). In March 2020, the claimant presented for left arm pain reporting the aorta graft last year secondary to infection and taking a regular aspirin daily (Ex. 11F/2). The claimant presented in mild distress, normal range of musculoskeletal motion, no edema, good strength, and no tenderness upon palpation (Ex. 11F/5). Therefore, the undersigned finds the claimant's physical impairments of hypertension, aortitis, hyperlipidemia, spondylosis, and diverticulosis non-severe as the impairments did not result in limitations, resolved with treatment in less than 12 months, or the claimant did not pursue additional treatment.

(Tr. 24 (emphasis added)). As cited by the ALJ, the medical records after the surgery show that Plaintiff did not complain of peripheral neuropathy and did not mention lingering back pain. (Tr. 24). Plaintiff's testimony supports the ALJ's finding that both his backaches and his neuropathy were non-severe. Plaintiff testified that he "gets backaches, but not anything serious enough to go back to the hospital for." (Tr. 51-52). He also testified that he received no treatment for backaches. (Tr. 52). And he testified that he suffers from neuropathy in his right leg, but he takes medication for it and the medication helps. (Tr. 56).

The Court finds no evidentiary gap in the record regarding Plaintiff's physical impairments, which resulted in unfairness or clear prejudice. Plaintiff merely speculates that because of his advanced age, he must have some limitations from

aortic surgery. But speculation alone does not amount to unfairness or clear prejudice such that the ALJ had a duty to develop the record further.

Finally, Plaintiff argues that the ALJ had not considered Plaintiff's inability to pay for medication and mental health treatment in the decision and this is clear error. Plaintiff claims that he only had insurance for six months after his last day of employment and could not afford medication and mental health treatment. This argument is unpersuasive. "[T]he ALJ may not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue medical treatment without first considering any explanations that might explain the failure to seek or pursue treatment." *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 487 (11th Cir. 2012). If an ALJ denies benefits based on non-compliance with care, he must consider any evidence showing that a plaintiff is unable to afford medical care. *Id.* (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003)). When an ALJ relies on noncompliance with prescribed medical treatment as the "sole ground for the denial of disability benefits," and the record contains evidence that a plaintiff was unable to afford the prescribed medical treatment, then the ALJ must determine whether a plaintiff could afford the prescribed medical treatment. *Ellison*, 355 F.3d at 1275.

The ALJ noted that at an emergency room visit, Plaintiff "reported taking no medication" and later noted that Plaintiff had no specific ongoing mental health

treatment after 2018. (Doc. 22, p. 16, 26). Plaintiff claims that he was not taking his medication and not attending therapy because he could not afford it. But Plaintiff fails to cite any portion of the decision showing that the ALJ denied Plaintiff's disability benefits solely based on non-compliance with medical care or treatment. Indeed, the ALJ made no such finding in the decision.

After consideration of the records as a whole, the ALJ did not err by failing to order a consultative physical examination, did not err at step two by finding Plaintiff's physical impairments non-severe, and did not deny benefits based solely on Plaintiff's inability to afford medication and treatment. Thus, substantial evidence supports the ALJ's decision on this issue.

### B. Severity of Plaintiff's Mental Health Impairments at Step Two

Plaintiff argues that the ALJ erred at step two by not finding Plaintiff's mental impairments severe. (Doc. 22, p. 25). In support, Plaintiff relies on a portion of consultative examiner Cheryl Kasprzak, Psy.D.'s evaluation and two initial assessments of functional limitations in a work settings. (Doc. 22, p. 25-27).

At step two, the ALJ found Plaintiff's "unspecified depressive disorder, panic disorder, and adjustment disorder with next anxiety and depressed mood" were medically determinable impairments, but not severe impairments. (Tr. 23). A severe impairment must significantly limit a plaintiff's ability to do basic work activity, which is defined as abilities and aptitudes necessary to do most jobs. 20 C.F.R. §§

404.1520(c); 404.1522(a)-(b). Basic mental work activities include: understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. *Id.* While a claimant has the burden to establish a severe impairment at step two, the burden is "mild." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019).

In March 2018, Plaintiff attended a psychiatric diagnostic evaluation. (Tr. 321-24). Plaintiff presented with concerns about anxiety regarding going to work. (Tr. 323). He started feeling anxious on his way to work and could not remember how to do his job when he arrived. (Tr. 323). Plaintiff reported he felt severe panic/anxiety on and off when going to work, but if he turned around and went home, the symptoms mainly went away. (Tr. 323). In April 2018, physician's assistant Angela Vallejo completed a Medical Request Form for an insurance company. (Tr. 283). She diagnosed Plaintiff with anxiety and found Plaintiff had work restrictions of being "unable to focus, speak to customers, or communicate [with] coworkers." (Tr. 283).

Nearly two years later, on March 16, 2020, consultative examiner Dr. Kasprzak completed a Medical Source Statement of Ability to do Work-Related Activities (Mental). (Tr. 1456-58). While Dr. Kasprzak found Plaintiff to have mild or no limitations in most areas, she determined that Plaintiff would have mild to

moderate limitations in his ability to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 1456-57). Dr. Kasprzak explained that Plaintiff "denied a clear history as well as any discord with supervisors or co-workers. The last domain [regarding ability to respond appropriately to usual work situations and changes in a routine work setting] would be impacted by his depression and anxiety." (Tr. 1457).

In the decision, the ALJ thoroughly considered Plaintiff's mental impairments and summarized the related medical records. (Tr. 25-28). The ALJ began by considering PAC Vallejo's February 2018 treatment records that showed Plaintiff had good judgment, normal mood and affect, active, alert, oriented, and normal recent and remote memory with reported stable anxiety. (Tr. 25). The ALJ also specifically considered the April 2018 treatment notes in which PAC Vallejo reported that Plaintiff was unable to focus, speak to customers, or communicate with coworkers. (Tr. 25). The ALJ noted that on examination, Plaintiff presented generally normal examination results, but was sad and anxious. (Tr. 25). He also noted that Plaintiff was reportedly able to sit quietly to talk and listen, did not disrupt the session, his thoughts were very organized, he showed attention to details, and agreed to medication and therapy. (Tr. 25). In August 2018, Plaintiff again saw PAC Vallejo, and the treatment notes showed Plaintiff demonstrated good judgment, normal mood and affect, active, alert, oriented, and normal recent and remote

memory. (Tr. 25). Nearly a year later, in May 2019, Plaintiff went to the emergency room and the notes reflect that Plaintiff had a normal mood and affect, normal behavior, and normal thought content. (Tr. 25). The ALJ noted that a June 2019 visit to the hospital also showed normal mental health, but Plaintiff had anxiety and depression on discharge. (Tr. 25). In January and March 2020, the ALJ noted that Plaintiff presented with good judgment, normal mood and affect, active, alert, oriented, and normal memory. (Tr. 25). The ALJ then summarized Dr. Kasprzak's evaluation results and specifically noted that she reported Plaintiff had mild to moderate limitations in responding appropriately to usual work situations and to changes in routine work settings. . (Tr. 25-26).

The ALJ considered the persuasiveness of PAC Vallejo's and Dr. Kasprzak's opinions as follows:

> The undersigned is not persuaded by the opinions of Angela Vallejo, PAC, who opined the claimant with restrictions of unable to focus, speak to customers, or communicate with coworkers, which is inconsistent with the findings on examination (Ex. 9F/2). The opinions are inconsistent with the objective medical record evidence showing stable mental status examinations.
>
> The undersigned is partially persuaded by the opinions of Cheryl Kasprzak, Psy.D., who opined the claimant with no more than mild limitations in ability to understand, remember, and carry out instructions and no limitations in interacting with the public, supervisors, and coworkers, which is supported by the findings on examination and a lack of mental health treatment (Ex. 12F). However, Dr. Kasprzak opined the claimant with mild to moderate limitations in responding appropriately to usual work situations and changes in routine

>  work setting, which is not supported by the findings on examination of adequate insight and judgment and prior stable mental status examinations and lack of treatment since 2018.

(Tr. 28). The ALJ thoroughly considered the medical opinions concerning Plaintiff's mental health impairments. The ALJ found PAC Vallejo's opinion that Plaintiff was unable to focus, speak to customers, or communicate with coworkers unpersuasive and supported that determination by findings the objective medical records showed stable mental status examinations. (Tr 28). The ALJ also found Dr. Kasprzak's opinion partially persuasive, but found her opinion that Plaintiff had mild to moderate limitations in responding appropriately to usual work situations and changes in routine work settings unpersuasive as it was not supported by the findings on examination of adequate insight and judgment, prior stable mental status examinations, and lack of treatment since 2018. (Tr. 28). The ALJ thoroughly considered Plaintiff's mental impairments and provided good reasons why he determined that Plaintiff's mental impairments were medically determinable but not severe.

The ALJ also considered the four broad functional areas of the "paragraph B" criteria set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments, 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 26). The ALJ found Plaintiff had mild limitations in all four functional areas: (1) understanding, remembering, or applying information; (2)

interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (Tr. 26-27). To support these findings, the ALJ cited medical records, including records from 2018 and Dr. Kasprzak's evaluation. (Tr. 26). The ALJ also relied on the state agency physicians who opined that Plaintiff had no severe mental impairments and no mental limitations. (Tr. 28). And the ALJ considered Plaintiff's daily activities, such as driving, preparing simple meals, washing dishes, taking out the trash, doing laundry, light cleaning, watching television, shopping, paying bills, handling banking accounts, swimming, and socializing to find Plaintiff's mental impairments non-severe. (Tr. 26).

From the medical evidence, the four broad functional areas, and Plaintiff's daily activities, the ALJ supported his determination that Plaintiff's medically determinable mental impairments caused no more than minimal limitations in Plaintiff's ability to do basic work activities and therefore did not meet the step two threshold for severe impairments. The ALJ also advanced good reasons to find PAC Vallejo's opinion unpersuasive and Dr. Kasprzak's opinion partially persuasive. Moreover, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). Even if the evidence preponderates against the Commissioner's decision, the Court must affirm if substantial evidence supports the Commissioner's decision. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5

F.4th 1315, 1320 (11th Cir. 2021).[2] Substantial evidence supports the ALJ's decision.

### III. Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on March 7, 2022.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

[2] Plaintiff mentions that an ALJ must consider a claimant's impairments in combination and a failure to so do is error warranting remand. (Doc. 22, p. 26). Plaintiff does not assert any further argument on this issue and it is therefore waived. . *See Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (holding claimant waived issue because he did not elaborate on claim or provide citation to authority regarding claim). In any event, the ALJ thoroughly considered both Plaintiff's physical and mental impairments in combination in the opinion. (Tr. 24-28).